LAU SHEE v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. May 31, 1927.

No. 5133.

1. Aliens ⬅32(18)—Evidence held to justify decision that Chinese woman entered United States for immoral purposes (Immigration Act 1917, § 19 [Comp. St. § 4289¼jj]).

Evidence *held* sufficient to justify decision by immigration authorities that Chinese woman entered United States with purpose of living in state of concubinage, in violation of Immigration Act 1917, § 19 (Comp. St. § 4289¼jj).

2. Aliens ⬅32(13)—In deportation proceeding, admission of letter, if error, held not prejudicial as to portion tending to prove facts positively testified to by alien.

In deportation proceeding before immigration officials, admission of letter, dated two years before, written by district director of immigration to Commissioner of Immigration at San Francisco, if error, for lack of opportunity to cross-examine writer, *held* not prejudicial as to portion tending to prove fact to which alien positively testified.

3. Aliens ⬅32(13)—In deportation proceeding, admission of letter, if error, held not prejudicial as to issue on which there was finding for alien.

In deportation proceeding before immigration officials admission of letter, dated two years before, written by district director of immigration to Commissioner of Immigration at San Francisco, if error, for lack of opportunity to cross-examine writer, *held* not prejudicial as to issue on which there was finding in favor of alien.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Petition for writ of habeas corpus by Lau Shee, also known as Low Fook Yung, also known as Ng Ong Fon, and also known as Low Shee, against John D. Nagle, Commissioner of Immigration of the Port of San Francisco. From an order denying her petition, petitioner appeals. Affirmed.

Emery F. Mitchell, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Lau Shee appeals from an order denying her petition for writ of habeas corpus. Shee is a Chinese woman, who arrived at Seattle in September, 1923, and, after investigation and hearing, was admitted as the wife of Jew Shep, an American citizen. In October, 1924, she was arrested under a warrant charging that she was in the United States in violation of section 19 of the Immigration Act of February 5, 1917 (Comp. St. § 4289¼jj), and in the course of the proceedings in 1926 the board of review found that Shee had entered the United States for immoral purposes and had obtained admission by fraud, not having been at the time of her entry the wife of a member of the exempt classes. Deportation was ordered.

Her main contention is that there was no evidence to support the findings of the immigration officials. The record shows that one Yee Leung, Chinese, a native American citizen, went to China in April, 1906, and returned to the United States in 1907 with a wife, Ng Shee, and a son, who was born in

May, 1907. Ng Shee died in China in February, 1916, and in September of that year Yee Leung married this appellant, who was then visiting in China at Hong Kong, and with his wife came to San Francisco in May, 1917. Lau Shee was then denied entry by the local immigration authorities, but upon appeal she was admitted in September, 1917. About two years later she and her husband separated. In 1922 Yee Leung again went to China, and returned in April, 1923.

In August, 1923, one Jew Shep, Chinese, a citizen of the United States, made affidavit before the American consulate in Hong Kong to the effect that he was a citizen of the United States, and that he left San Francisco in October, 1922, to attend to commercial matters and to marry. Shep and this appellant came to the United States with their minor son, and landed at Seattle in September, 1923. At the examination then had, appellant testified that she was a native of Sar Gow village, China, and had lived there until shortly before her marriage to Shep, and then went to Canton, and a little later to Hong Kong, where she was married to Shep in November, 1922, "according to the new way"; that Shep was her first husband, and that she was never married by any custom other than "the new way"; that there was no minister at the ceremony, only some Chinese people, and the man who had arranged the marriage. Shep, the alleged husband, testified that he was married to Lau Shee, appellant, at Hong Kong, "half the old Chinese way and half the new way"; that there was no ceremony of worshipping the ancestors; that he had a Chinese red marriage paper, "not the regular red marriage paper, just a small piece, that is because I was married a second time"; that, although he was married in British territory, he had not married according to the custom recognized by British authority, as there was no law requiring Chinese to marry under British custom; and that, besides, it took a good deal of money to get a license from the British government; that many Chinese married under the British custom; that he tried to get Mr. King, an American minister, to make out a marriage license, but that as his friend, Mr. Wylie, was coming back to the United States, and he was helping him, he (Shep) did not have time; that he depended upon Mr. Wylie, and did not know how to go to the consul's.

Upon her examination before the executive authorities in 1924, appellant testified that Yee Leung was at one time her husband, and that she landed in the United States with him in 1917, and had lived with him for about a year and a half or two years, when she lost sight of him and returned to China. She first denied that she had ever been in Fresno, Cal., in 1921, but later said she remembered having been examined by the immigration officials at that city about four years before the time of her last examination. She made conflicting statements as to when she had last seen Yee Leung, and finally said she had seen him a year and half or two years after their admission to the United States. In explanation of her marriage to Jew Shep she said that Yee Leung did not want her any more; that he left her, and that she had heard that he had returned to China; that at the time of the last investigation she was not Yee Leung's wife, as the marriage relation was dissolved, because Yee Leung had married her in China and had deserted her in the United States; that when he left her he told her that she was entirely out of his control and free to marry any one she pleased; that there had been no divorce obtained from Yee Leung, for the reason that she and Yee Leung were not married according to the laws of the United States; that she had told an untruth when, at the previous examination, she stated that she was never married before; that she knew Shep in Fresno in 1921, and that while there he knew she was a married woman. It was also in evidence that Yee Leung was alive and in San Francisco in 1926.

[1] The foregoing statement makes it apparent that the executive authorities were fully justified in deciding that, when the appellant landed at Seattle, she knew she was not the lawful wife of Jew Shep, and entered the United States with the purpose of living with him, and did live with him, in a state of concubinage.

To sustain the suggestion that if, at the time of her separation from Yee Leung, he told her that she was free to marry any one she wished, and that if she believed it, there was justification for an inference that he had obtained a divorce from appellant in the United States or in China, and that such inference should be accepted as sufficient to permit admission into the United States, would be, in effect, to rule that the uncorroborated statement of an alien, seeking admission into the United States, that her spouse had told her that she was free to contract another marriage, is entitled to credit equal to a judicial decree of divorce.

[2] The hearing had before the immigration officials in 1926 is said to have been unfair, for the reason that they admitted in evidence a letter, dated October, 1924, written by a district director of immigration at San Fran-

cisco to the Commissioner of Immigration at that city. Counsel for appellant objected to the introduction of the letter, upon the ground that no opportunity had been afforded to cross-examine the writer, and made demand that the writer be produced, if the letter was to be made a part of the record. After more questions and answers were put and made, counsel stated that, in view of the fact that the letter referred to was based on hearsay testimony and "information not part of the record," he waived the right to cross-examine the writer, and that, except for a brief to be filed, he had nothing further to present. The case then stood as submitted, with the right to file a brief.

[3] The major portion of the letter pertains to the identity of Lau Shee as the woman who came to the United States in 1917 as the wife of Yee Leung; but, as Lau Shee testified positively that she had come to the United States in 1917 with her husband, Yee Leung, she was not prejudiced in that respect by statements in the letter. In the remaining part of the letter the writer stated that he was informed that Lau Shee, subsequent to her entry into the United States, was a prostitute. But, inasmuch as the immigration authorities, in their report dated November, 1926, expressly found that there was no evidence in the record to sustain the charge that she practiced prostitution after her entry, and as no such ground was included in the warrant of deportation, the statement in the letter had no relation to the facts found, which constituted the legal reasons for the order of deportation.

We find no reason for disturbing the order of the District Court. Affirmed.